ROGERS, Circuit Judge,
dissenting in part and concurring in the judgment:
Petitioner Gunpowder Riverkeeper is an environmental protection organization whose members live, work, and engage in recreational activities in the river’s watershed. Their ability to do so is directly threatened by the pipeline project that the Federal Energy Regulatory Commission has approved. Contrary to the court’s conclusion, that is sufficient to demonstrate that its members have interests protected by the National Environmental Policy Act (“NEPA”), 42 U.S.C. §§ 4321 et seq., and the Clean Water Act, 33 U.S.C. §§ 1151 et seq. Petitioner’s merits contentions, however, are unpersuasive, and I therefore concur in the judgment denying the petition.
I.
To state a valid claim for relief, a petitioner’s interest must be “arguably within the zone of interests to be protected or regulated by the statute” whose violation is alleged. Ass’n of Data Processing Serv. Orgs., Inc. v. Camp, 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). The zone-of-interests test is not jurisdictional, but rather a rule of statutory interpretation under which the court must “presume that a statutory cause of action extends only to [petitioners] whose interests fall within the zone of interests protected by the law invoked.” Lexmark Int’l, Inc. v. Static Control Components, Inc., — U.S. —, 134 S.Ct. 1377, 1388, 188 L.Ed.2d 392 (2014) (internal quotation marks omitted).
The zone-of-interests test “is not meant to be especially demanding.” Clarke v. Sec. Indus. Ass’n, 479 U.S. 388, 399, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987). The Supreme Court has “always conspicuously included the word ‘arguably’ in the test to indicate that the benefit of any doubt goes to the plaintiff.” Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak, — U.S. —, 132 S.Ct. 2199, 2210, 183 L.Ed.2d 211 (2012). As a result, “the test forecloses suit only when a [petitioner]^ interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress authorized that [petitioner] to sue.” Lexmark, 134 S.Ct. at 1389 (internal quotation marks omitted). This forgiving version of the test applies in the context of the Administrative Procedure Act (“APA”), see Ben *276 nett v. Spear, 520 U.S. 154, 163, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997), as well as to challenges under the Natural Gas Act, 15 U.S.C. §§ 717 et seq. The Supreme Court has explained that the “lenient approach is an appropriate means of preserving the flexibility of the APA’s omnibus judicial-review provision, which permits suit for violations of numerous statutes of varying character that do not themselves include causes of action for judicial review.” Lexmark, 134 S.Ct. at 1389. The judicial review provision of the Natural Gas Act, 15 U.S.C. § 717r(b),[1] is also such a statute.
Accordingly, this court has concluded that the relevant zone of interests for environmental statutes like NEPA “encompasses environmental values, read, of course, very broadly.” Realty Income Trust v. Eckerd, 564 F.2d 447, 452 n. 11 (D.C.Cir.1977). Thus, any petitioner who “arguably” asserts an environmental interest, read “very broadly,” satisfies the test. The outer limits of the test are illustrated by this court’s precedent holding that businesses and individuals asserting purely monetary interests do not come within environmental statutes’ zones of interests. Thus, the court has explained that businesses “seeking to increase the regulatory burden on others in order to advance their own commercial interests” do not come within the Clean Air Act’s zone of interests. White Stallion Energy Ctr., LLC v. EPA 748 F.3d 1222, 1258 (D.C.Cir.2014), rev’d on other grounds, Michigan v. EPA — U.S. —, 135 S.Ct. 2699, 192 L.Ed.2d 674 (2015); 42 U.S.C. § 7412. Similarly, a landlord protecting “monetary interests alone” who “can at best claim only a remote, insubstantial, highly speculative and ephemeral interest in the environment” does not fall within NEPA’s zone of interests. Eckerd, 564 F.2d at 452 n. 11 (internal quotation marks omitted). In Eckerd, the court suggested this was true of the plaintiffs in Zlotnick v. Redevelopment Land Agency, 2 E.L.R. 20,235 (D.D.C. Mar. 3, 1972), who were owners of “an empty downtown lot” and “d[id] not reside in the affected area,” and who brought a NEPA challenge with “nothing but their own financial interest to protect,” see id. at 20,235-36. Other circuits have likewise concluded that NEPA does not protect an interest that “is purely financial” because the statute “is directed at environmental concerns, not at business interests.” Ashley Creek Phosphate Co. v. Norton, 420 F.3d 934, 939 (9th Cir.2005); see Latin Am. for Soc. and Econ. Dev. v. Adm’r of Fed. Highway Admin., 756 F.3d 447, 465-66 (6th Cir.2014); Clinton Comm. Hosp. Corp. v. S. Md. Med. Ctr., 510 F.2d 1037, 1038 (4th Cir.1975).
Nothing about petitioner Gunpowder Riverkeeper suggests it is seeking to protect interests that are strictly financial. It is a non-profit organization whose “general purpose is the protection [of] the Gunpowder River watershed,” Petr.’s Br. 3, where its “members live, work, and recreate,” id. at 17; Op. 275-76, 278. The organization is “engaged in natural resource protection and conservation” on behalf of its members, Petr.’s Br. 3, aiming to “maintain and enhance the water quality and aquatic and natural resources of the watershed,” id. It *277 participated throughout the Commission proceedings, raising issues related to water quality, forest cover, and wildlife. See Pet. For R’hg, Docket No. CP13-8-000, Nov. 10, 2014. Nonetheless, the court concludes petitioner cannot invoke the protection of two environmental statutes, Op. 280-81, because its “interests are so marginally related to or inconsistent with” environmental concerns that Congress could not have intended to allow its cause of action, Lexmark, 134 S.Ct. at 1389 (internal quotation marks omitted). The court seizes on petitioner’s use of the word “property” and not “environment” in its appellate brief as the reason for concluding petitioner’s interests fall on the “purely financial” side of the line and fail the zone-of-interests test. The court has misapplied the test.
The appellate briefs alone make clear that petitioner falls within the zones of interests of NEPA and the .Clean Water Act. The organization’s sole purpose is to protect the Gunpowder River and surrounding environment. See Petr.’s Br. 3. Its members stand to lose the property on which they “live, work, and recreate.” Id. at 17. Their loss of such opportunities is different from the purely monetary interests of a business seeking to impose regulatory costs on a competitor, see White Stallion, 748 F.3d at 1258, or a company trying to steer business its way through the regulation of distant land use, see Ashley Creek, 420 F.3d at 939. Petitioner’s members are not absentee landowners as in Zlotnick (and thus Eckerd), but actually live on the property affected by the Commission’s challenged action. A decrease in the enjoyment of natural resources comes within NEPA’s zone of interests. See, e.g., United States v. Students Challenging Regulatory Agency Procedures, 412 U.S. 669, 684-85, 686 n. 13, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973). As a result of eminent domain, some of petitioner’s members face the loss of that enjoyment. Under the Supreme Court’s “lenient approach,” Lexmark, 134 S.Ct. at 1389, in which “the benefit of any doubt goes to the plaintiff,” Patchak, 132 S.Ct. at 2210, that is enough for petitioner to come within the zones of interests of NEPA and the Clean Water Act.
The briefs also reference attached affidavits of petitioner’s members. See Petr.’s Br. 15, 17; Reply Br. 6. Those affidavits describe a litany of environmental interests that will be adversely affected by the loss of property through eminent domain. See, e.g., Le Gardeur Aff. ¶ 6 (“My livelihood and that of my staff and guides is directly tied to the high quality, cold water resources.”); id. ¶ 7 (members “work, live and recreate along the Gunpowder River and its tributaries”); id. ¶ 15 (members “rely on drinking water” from watershed and thus have “interests in [] protecting their drinking water from impacts of the project”); Tedeschi Aff. ¶ 2 (describing reliance “on well water for drinking etc. [and therefore] water quality is important to us”); id. ¶ 5 (“Loss of the well jeopardizes the habitability of the property.”); id. ¶ 7 (“[T]he well may be contaminated by this process.”); Mickel Aff. ¶3 (interest in “maintaining a clean, healthy water system for drinking, swimming, and fishing”); id. ¶ 7 (“We do feel the aesthetic, emotional and physical loss of our trees.”); id. ¶ 9 (describing members as “people who live on, work and love the land they own”); Merryman Aff. ¶4 (“My brothers and I were raised on this farm where we swam and fished in this creek.”); id. ¶ 6 (seeking to protect “large trees” and “our well, seeps, springs” and other bodies of water). The court strains credulity in describing these statements merely as “assertions of injury that could be construed as environmental.” Op. 274 (emphasis added). Unsurprisingly, the court cites no authority to *278 support the possibility that such interests are not environmental, for there can be no doubt that the interests identified by petitioner’s members are at least “arguably within the zone of interests to be protected or regulated by” both NEPA and the Clean Water Act. Data Processing, 397 U.S. at 153, 90 S.Ct. 827 (emphasis added).
The record before the Commission removes any doubt about whether petitioner has and is now asserting environmental interests. Petitioner conveyed to the Commission that it was “fundamentally concerned with the cumulative environmental impacts of this [pipeline] project on the waterways that provide vital drinking water and recreational opportunities” to its members. Pet. for R’hg, Docket No. CP13-8-000, Nov. 10, 2014, at 9-10. “Equally important” to petitioner’s members was “the present condition of the adjacent lands of these waterways.” Id. at 10. When the administrative record makes a petitioner’s standing “self-evident,” no more is required. Sierra Club v. EPA, 292 F.3d 895, 899-900 (D.C.Cir.2002). The court has suggested that the same is true in the zone-of-interests context. See Nat’l Assoc. of Home Builders v. U.S. Army Corps of Engineers, 417 F.3d 1272, 1286-87 (D.C.Cir.2005). Yet the court today has refused even to consider the administrative record. While a petitioner must “affirmatively ... invoke an interest within the relevant zone of interests,” Op. 274 n. ***, petitioner has amply done so, not only before the Commission, but in its briefs and affidavits submitted to the court.
Although petitioner has referred to its members’ “property interests,” see Petr.’s Br. 15; Reply Br. 4, an interest in “property” does not necessarily refer to commercial or financial interests alone, as the standing affidavits and agency record make plain. The asserted interest pertains to using that property — which encompasses trees, water, wildlife, etc. — to “live, work, and recreate.” Petr.’s Br. 17; Reply Br. 6 (citing Mickel and Merryman affidavits). The use of the word “property” did not magically transform petitioner’s members’ stated interests in their natural environment into an interest in money alone. The court’s conclusion that their only interest is monetary is too obtuse for a test that “is not meant to be especially demanding.” Clarke, 479 U.S. at 399, 107 S.Ct. 750.
No doubt, petitioner presented a zone-of-interests analysis only for the Natural Gas Act, see Reply Br. 2-4, but in so doing, petitioner conveyed more than enough to make clear that its interests came within the environmental statutes’ zones of interest. The court is “not limited to the particular legal theories advanced by the parties.” U.S. Nat’l Bank of Or. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 446, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993); see Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 99, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991). Where the correct analysis is as clear as it is here, there is no reason for the court not “to identify and apply the proper construction of governing law.” United States v. Duvall, 705 F.3d 479, 485 (D.C.Cir.2013) (Williams, J., concurring in the judgment) (quoting U.S. Nat’l Bank of Or., 508 U.S. at 446, 113 S.Ct. 2173). The reason petitioner focused on its members’ property rights likely stems from its view that it only had to present a zone-of-interests analysis under the Natural Gas Act because that statute provided the cause of action, see 15 U.S.C. § 717r(b), supra note 1. Petitioner did not thereby suggest that it had no environmental interests, or that it was not challenging the Commission’s action to protect those interests. Such a concession would have contradicted its organizational purpose, everything it argued to the Commission during administrative *279 proceedings, and everything its members have told us in the standing affidavits attached to its briefs.
Because the court has imposed a far more constricted version of the zone-of-interests test than Supreme Court precedent allows and this court has applied, I respectfully dissent from the holding that petitioner does not have a cause of action under the Clean Water Act or NEPA.
II.
Petitioner contends that the Commission’s decision granting a conditional certificate of public convenience and necessity violated the Clean Water Act and NEPA. Neither challenge is persuasive.
A.
Petitioner challenges the Commission’s conditional certification of the pipeline project as a violation of the requirement in the Clean Water Act that federal agencies must obtain approval from state regulators before approving projects that might impact water quality.
Under section 401(a)(1) of the Clean Water Act, before a federal agency can issue a “license or permit to conduct any activity including, but not limited to, the construction or operation of facilities, which may result in any discharge into the navigable waters,” it must receive “a certification from the State in which the discharge orig-' inates or will originate ... that any such discharge will comply” with the state’s water quality standards. 33 U.S.C. § 1341(a)(1). “No license or permit shall be granted until the certification required by this section has been obtained or has been waived.” Id.
The Commission characterizes the challenged conditional approval as an exercise of its authority under the Natural Gas Act to impose conditions on a certificate of public convenience and necessity, see 15 U.S.C. § 717f(e).[2] But the Commission has not suggested that its conditioning authority relieves it of the need to comply with other federal statutes. To the contrary: The challenged certificate includes a specific condition that before construction could be authorized the pipeline owner must file documentation showing “it has received all applicable authorizations required under federal law (or evidence of waiver thereof).” Certif. Order ¶8. The question presented by petitioner, then, is not whether the Commission’s action was permitted by the Natural Gas Act, but rather whether its action was prohibited by the Clean Water Act.
The plain text of the Clean Water Act does not appear to prohibit the kind of conditional certificate the Commission issued here. On its face, section 401(a)(1) does not prohibit all “licensefs] or permit[s]” issued without state certification, only those that allow the licensee or per-mittee “to conduct any activity ... which may result in any discharge into the navigable waters.” 33 U.S.C. § 1341(a)(1). Petitioner has pointed to no activities authorized by the conditional certificate itself that may result in such discharge prior to the state approval and the Commission’s issuance of a Notice to Proceed. In fact, the Commission issued that Notice after the State of Maryland issued its Clean Water Act certification approving the pipeline project. The Commission’s conditional certificate thus preserved the State’s “power to block the project” under *280 § 401(a). City of Tacoma v. FERC, 460 F.3d 53, 67 (D.C.Cir.2006).
This court has upheld conditional permitting in similar circumstances. In City of Grapevine v. Department of Transportation, 17 F.3d 1502, 1508-09 (D.C.Cir.1994), the court considered whether the Federal Aviation Administration (“FAA”) could approve the construction of a runway conditioned on the successful completion of the review process required by the National Historic Preservation Act. That Act provided that “prior to the approval of the expenditure of any Federal funds on” a project that might impact an historic place, the agency had to consult with the Advisory Council on Historic Preservation and with state historic preservation officials. Id. at 1509 (quotation marks omitted). The court held that the FAA’s conditional approval did not violate the Act because the FAA “did not ‘approv[e] the expenditure of any Federal funds’ for the runway,” id. at 1509 (quoting 16 U.S.C. § 470f), which is all that the Act prohibited prior to consultation. Echoing the circumstances here, the court explained that if the regulated party “commits its own resources” to the project before the condition is satisfied, “then it does so at the risk of losing its investment” should the project ultimately not go forward. Id. at 1509. Similarly, in Public Utilities Commission of California v. FERC, 900 F.2d 269, 282 (D.C.Cir.1990), the court held that the Commission had not violated NEPA by issuing a certificate conditioned upon the completion of the environmental analysis.
The cases on which petitioner relies are inapposite because they do not involve certificates conditioned on state approval. Petitioner points to PUD No. 1 of Jefferson County v. Washington Department of Ecology, 511 U.S. 700, 114 S.Ct. 1900, 128 L.Ed.2d 716 (1994), in which the Supreme Court noted that “§ 401 of the [Clean Water] Act requires States to provide a water quality certification before a federal license or permit can be issued for activities that may result in any discharge into intrastate navigable waters.” Id. at 707, 114 S.Ct. 1900 (emphasis added). Exactly so: State certification is necessary before the Commission authorizes “activities that may result in any discharge into intrastate navigable waters.” Id. The discussion in PUD No. 1 on which petitioner relies merely summarizes the language of the Act; it does not suggest that the section 401(a)(1) prohibition might also reach activities that do not have any impact on intrastate navigable waters. As the Court stated in PUD No. 1, “[ejection 401(a)(1) identifies the category of activities subject to certification — namely, those with discharges.” Id. at 711-12, 114 S.Ct. 1900.
Similarly, in City of Tacoma, 460 F.3d 53, this court addressed a different question: whether the Commission had to determine that the state certification was in fact “the certification required by [section 401(a)(1)].” 33 U.S.C. § 1341(a)(1); see City of Tacoma, 460 F.3d at 67-68. In that context, the court summarized section 401’s requirement by stating that “without that certification, FERC lacks authority to issue a license.” Id. at 68. First, the court had no occasion to address what kind of “license” might comply with the Clean Water Act in different circumstances; the Commission’s license in that case had not been conditional on state certification because the state had already issued what the Commission believed to be a valid certification. See id. at 67. Second, the court’s description is consistent with the plain text of section 401(a)(1): the Commission “lacks authority to issue a license” to conduct activities affecting intrastate navigable waters. Id. at 67-68. But that does not mean it also lacks authority to issue other kinds of licenses; petitioner offers no reason to conclude the Clean *281 Water Act applies to all manner of regulated activities that do not affect water quality.
B.
With regard to NEPA, petitioner challenges the adequacy of the Commission’s Environmental Assessment, based on the Commission’s reliance on other agencies’ environmental analyses in determining that an Environmental Impact Statement was unnecessary. See 42 U.S.C. § 4332(2)(C); 40 C.F.R. § 1508.9. But where this court has rejected-an agency’s reliance on other entities’ environmental analyses, see Idaho v. ICC, 85 F.3d 585 (D.C.Cir.1994); Calvert Cliffs’ Coordinating Comm. v. Atomic Energy Com’n, 449 F.2d 1109 (D.C.Cir.1971), the agency had failed to undertake any analysis of its own. That is not the case here.
The Commission prepared a detailed Environmental Assessment with specific and responsive discussions of issues raised at public meetings and in written submissions, applying its own observations and reasoning and explaining mitigating steps that the pipeline owner would be required to take to minimize the identified environmental impacts. The Commission’s mention of other agencies’ certification processes reflects a healthy appreciation of relevant views, not an abdication of its own responsibilities or a negation of the remainder of its own environmental analysis. Petitioner thus fails to identify the fatal type of abdication that the court disapproved in Idaho and Calvert Cliffs.
C.
Whether the Commission’s conditional certificate allowed for the immediate exercise of eminent domain is not entirely clear. The Natural Gas Act allows the use of eminent domain pursuant to a certificate that authorizes “the construction or extension of [ ] facilities,” 15 U.S.C. § 717f(c)(l)(A); see id. § 717f(e). The initial certificate issued by the Commission here did not authorize any construction. Must the “holder of a certificate of public convenience and necessity” described in the eminent domain provision, see id. § 717f(h), be a holder of the type of certificate described in § 717f(c) — that is, one who is authorized to begin construction, extension, or operation of facilities? If permitting eminent domain did not require the approval of construction, then the Commission could authorize the use of eminent domain for projects that are ultimately rejected by the State under the Clean Water Act. Petitioner has not presented a challenge stemming from any violation of the Natural Gas Act, see Reply Br. 3, 14 n. 7, and so resolution of this question is for another day. See also Op. 271 n.*.
Accordingly, although I part from the court’s conclusion that petitioner fails to come within the zones of interests of NEPA and the Clean Water Act, I join the judgment denying the petition.

. 15 U.S.C. § 717r(b) provides:
Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the court of appeals of the United States for any circuit wherein the natural-gas company to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court, within sixty days after the order of the Commission upon the application for rehearing, a written petition praying that the order of the Commission be modified or set aside in whole or in part.

. 15 U.S.C. § 717f(e) provides: "The Commission shall have the power to attach to the issuance of the certificate and to the exercise of the rights granted thereunder such reasonable terms and conditions as the public convenience and necessity may require.”